# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### (WESTERN DIVISION)

_____

Dale Goettsch, Kathy Goettsch,       Case No. 5:13-cv-04053-MWB
and Margaret Steffen,

            Plaintiffs,

vs.

Thomas Goettsch, Brian Goettsch,
Paul Goettsch, Circle G Farms, Inc.,
an Iowa corporation, and
Goettsch Farms, an Iowa partnership,

            Defendants.

_____

## COMPLAINT
_____


      Plaintiffs Kathy Goettsch, Dale Goettsch, and Margaret Steffen ("Plaintiffs"), for

their claims against Defendants Thomas Goettsch, Brian Goettsch, Paul Goettsch

(collectively referred to herein as "Defendants"), Circle G Farms, Inc. ("Circle G"), an

Iowa corporation, and Goettsch Farms ("Goettsch Farms"), an Iowa partnership, state and

allege as follows:

## THE PARTIES

     1.     Plaintiffs are citizens of the State of Minnesota.

     2.     Defendants Thomas Goettsch ("Tom") and Brian Goettsch are citizens of

the State of Iowa.

     3.     Defendant Paul Goettsch is a citizen of the State of South Dakota.

4.     Defendant Circle G is a corporation, with its principal place of business in Iowa, and is a citizen of the State of Iowa.

5.     Defendant Goettsch Farms is a partnership and its partners are Tom and Brian Goettsch, both of whom are Iowa citizens, and Goettsch Farms is a citizen of the State of Iowa.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1), in that the dispute is between citizens of different states and, as reflected in the facts alleged herein, the sum or value in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

7.     Venue is appropriate in this district as Defendants, Circle G and Goettsch Farms, are located within this district, a substantial part of the acts or omissions giving rise to the claims occurred in this district, and a substantial part of the property related to the subject of the action is located in this district.

## FACTUAL BACKGROUND

### History – Circle G

8.     Circle G is an S corporation, and was formed in 1997.

9.     In 1997, 1998, 1999 and 2002, Murlen Goettsch conveyed certain parcels of land located in Cherokee County, Iowa, to his seven sons and daughters, including Plaintiffs and Defendants, as follows:   1/7th to Jacquelynn Goettsch, 1/7th to Paul Goettsch, 1/7th to Margaret Steffen, 1/7th to Kathy Goettsch, 1/7th to Dale Goettsch, 1/7th

to Thomas Goettsch, and 1/7th to Brian Goettsch. The recipients of this gifted land then

in turn conveyed such land to Circle G.

10.     Circle G is the record owner of the following land in Cherokee County,

Iowa:

> The North Half of the Southeast Quarter (N1/2 SE1/4) of Section Thirty-three
> (33), Township Ninety (90) North, Range Thirty-nine (39) West of the Fifth P.M.,
> EXCEPT the following described parcel:
>
> A tract of land located in the Northeast Quarter of the Southeast Quarter (NE1/4
> SE1/4) of Section Thirty-three (33), Township Ninety (90) North, Range Thirty-
> nine (39) West of the 5th P.M., Cherokee County, Iowa, more completely
> described as follows:
>
> Commencing at the Southeast (SE) Corner of said Section 33; thence N 00°00'00"
> W 2012.07 feet along the East line of the SE1/4 of said Section 33 to the Point of
> Beginning; thence continuing N 00°00'00" W 628.65 feet along said East line to
> the NE Corner of the SE1/4 of said Section 33; thence S 89°47'18" W 359.36 feet
> along the North line of the SE1/4 of said Section 33; thence S 02°59'43" E 159.49
> feet; thence S 22°42'45" W 403.10 feet; thence N 89°13'47" E 277.08 feet; thence
> S 01°53'27" E 97.78 feet; thence S 89°26'34" E 226.39 feet to the Point of
> Beginning. Said tract contains 5.45 acres, including present established roadway.
> Note: The East line of the SE1/4 is assumed to bear due North and South.
>
> AND
>
> The South Half of the Southeast Quarter (S1/2 SE1/4) of Section Thirty-three
> (33), Township Ninety (90) North, Range Thirty-nine (39) West of the Fifth P.M.
>
> AND
>
> The North Half of the Southwest Quarter (N1/2 SW1/4) of Section Thirty-three
> (33), Township Ninety (90) North, Range Thirty-nine (39) West of the Fifth P.M.
>
> AND
>
> The South Half of the Southwest Quarter (S1/2 SW1/4) of Section Thirty-three
> (33), Township Ninety (90) North, Range Thirty-nine (39) West of the Fifth P.M.

11.     In his Last Will and Testament dated November 7, 1995 ("Murlen

Goettsch's Will"), Murlen H. Goettsch, the father of Plaintiffs, Defendants, and

Jacquelynn Goettsch, devised certain land as a jointly-owned farm located in Ida County, as follows: 1/7th to Jacquelynn Goettsch, 1/7th to Paul Goettsch, 1/7th to Margaret Steffen, 1/7th to Kathy Goettsch, 1/7th to Dale Goettsch, 1/7th to Thomas Goettsch, and 1/7th to Brian Goettsch.

12.     Murlen Goettsch died on September 18, 2006.

13.     The following described land, located in Ida County, Iowa, was devised under Murlen Goettsch's Will to the seven sons and daughters of Murlen Goettsch:

The South Half of the Northwest Quarter (S1/2NW1/4) of Section Seventeen (17), Township Eighty-nine (89) North, Range Thirty-nine (39) West of the Fifth P.M., Ida County, Iowa.
AND
The Southwest Quarter (SW1/4) of Section Twenty Four (24), Township Eighty-nine (89) North, Range Thirty-nine (39) West of the Fifth P.M., Ida County, Iowa.
AND
The Southwest Quarter (SW1/4) and the West Half of the Southeast Quarter (W1/2 SE ¼) of Section Twenty-eight (28), Township Eighty-nine (89) North, Range Thirty-nine (39) West of the Fifth P.M., Ida County, Iowa.

14.     The jointly owned farmland inherited by the sons and daughters of Murlen H. Goettsch was then in turn transferred to Circle G.

15.     Prior to August of 2012, Circle G was the record owner of the aforementioned real estate in both Ida County and Cherokee County, which consisted of 798 acres, including, on information and belief, approximately 747 tillable acres (the "Circle G Farmland").

16.     Circle G issued in total 7,000 shares of common stock, and each of the sons and daughters of Murlen Goettsch received 1,000 shares.

17.     In 2010, Defendant Tom Goettsch completed the purchase of the 1,000 shares of Circle G owned by Jacquelynn Goettsch, which increased Tom Goettsch's stock ownership in Circle G to 2,000 shares, and Jacquelyn Goettsch ceased to be a shareholder in Circle G.

18.     Since Murlen Goettsch's death, Circle G has been engaged in the cash rental of its land for farming purposes.

19.     After Murlen Goettsch's death, Circle G began a consistent practice of paying regular monthly cash dividends to all the shareholders, including Plaintiffs.

20.     Monthly dividends based on $1 per share were paid by Circle G in 2007, 2008, 2009, 2010, 2011, and the first eight months of 2012, to all the shareholders.

21.     At the end of 2009, 2010, and 2011, additional dividends were paid by Circle G  at the rate of $5 per share per year.

22.     The dividends from Circle G received by Plaintiffs were the only financial return Plaintiffs realized from their collective 3/7ths ownership interest in Circle G.

23.     Plaintiffs, as owners of Circle G, had a reasonable expectation that they would receive monthly and year-end dividends from Circle G.

24.     From 2007 to 2010, shareholders of Circle G had annual meetings and other events where Plaintiffs actively participated in governance issues regarding Circle G.

25.     Circle G is a closely held corporation; there is no market for its shares, and no trading in its shares on any exchange.

## Plaintiffs' Claims

26.     Defendants, through their positions as members of the Board of Directors of Circle G, as collectively the owners of the majority of the outstanding shares, and as those farming Circle G's land, have been since July of 2012, and continue to be, in control of Circle G and its business decisions.

27.     Over the years, the value of Circle G's Farmland has increased significantly, and Circle G's enterprise value has likewise increased.

28.     Based on their control and status as directors and officers of Circle G, Defendants owe fiduciary duties of due care, good faith, disclosure and loyalty to Circle G and all the shareholders, including Plaintiffs.

29.     As set forth herein, Defendants have engaged in oppressive acts and omissions as directors and as the group of shareholders in control of Circle G, which have had the effect of, and have been calculated to, squeeze out Plaintiffs as minority shareholders from meaningful participation in Circle G and from the financial benefits of being shareholders in Circle G.

30.     As outlined herein, among other things, Defendants, while possessing significant conflicts of interest, have caused Circle G to enter into contracts favorable to Defendants individually; have breached their fiduciary duties of care and loyalty; have used corporate assets for personal benefit; have excluded Plaintiffs from meaningful participation in corporate matters; have retaliated against Plaintiffs; have failed to provide or disclose information of importance relating to Circle G and its business to Plaintiffs; have terminated dividends and thereby any financial return to Plaintiffs; have engaged in

transactions with each other which have caused unnecessary and adverse tax consequences to Circle G and its shareholders; and, in a further effort to squeeze out Plaintiffs, have offered to purchase Plaintiffs' stock in Circle G for an inadequate sum at far less than fair value.

## Rental of the Circle G Farmland

31.     From its inception, Circle G has rented for cash the Circle G Farmland to Goettsch Farms, and Defendants Tom and Brian Goettsch, through Goettsch Farms, have farmed Circle G's land.

32.     The appropriate rent to be charged by Circle G to Goettsch Farms has been the subject of discussion, and dissension, among the shareholders of Circle G for several years prior to 2012.

33.     Since approximately March 1, 2010, the Circle G Farmland has been rented to Goettsch Farms at a price of $8,400 per month, for the rental of 746.7 tillable acres (the amount of tillable acreage represented by Defendants), which is a base rent of $135 per acre.

34.     For the years 2010 and 2011, Circle G and Tom and Brian Goettsch, through Goettsch Farms, agreed on an additional payment of $37,000 annually, which was referred to as a "rent bonus".

35.     The total of the base rent and the rent bonus generated annual revenue for Circle G in such years of $137,800, which was approximately $185 per acre.

36.     Prior to and after July of 2012, Plaintiffs, as shareholders in Circle G, have objected to the rent charged to Goettsch Farms as being too low, and significantly below fair rental value for comparable land.

37.     Since 2011, Defendants Tom Goettsch, along with Brian and Paul Goettsch, have controlled the decision making on the part of Circle G with respect to the cash rent to be charged to Goettsch Farms for leasing the Circle G Farmland.

38.     From 2011 to the present, the fair rental value for the land owned by Circle G has been significantly higher than the base rent (or the base rent with any bonus) paid by Goettsch Farms.

39.     From 2012 to the present, the rent charged by Circle G to Goettsch Farms, and indirectly Tom and Brian Goettsch, has been significantly below market value, such rent has been and continues to be unfair and oppressive to the shareholders of Circle G who do not have a financial interest in Goettsch Farms, and such unfair rent has reduced Circle G's ability to generate revenue to provide a reasonable return for all of Circle G's shareholders.

40.     Through this artificially low and unfair rent, Defendants Tom and Brian Goettsch, and Goettsch Farms, have been unjustly enriched by paying below market rent through Goettsch Farms to lease the Circle G Farmland.

### The July Proposal and the August 4, 2012 Annual Meeting –
### Defendants' Diversion of Assets and Termination of Regular Dividends

41.     In August of 2012, Defendants Tom, Paul and Brian Goettsch, in concert and actively working to control Circle G, elected themselves directors of Circle G.

42.     By owning the controlling ownership stake in Circle G, and by virtue of their status as members of the Circle G board of directors, Defendants have effectively controlled the governance decisions involving Circle G since July of 2012.

43.     From 2012 to the present, Tom and Brian Goettsch were in control of Goettsch Farms and farmed the Circle G Farmland, and Paul Goettsch's support for Tom and Brian's actions was obtained through financial or other benefits provided or promised by them to Paul Goettsch.

44.     In July of 2012, Defendants circulated a proposal to have the Circle G stock of Paul and Plaintiffs redeemed by Circle G in exchange for the transfer from Circle G to each of them of 80 acres of Circle G land, plus payment of $50,000 in cash to each of them, a five-year lease of the land received to Goettsch Farms with lease payments of $40,000 per year (approximately $500 per acre), and an option and right of first refusal on the part of Goettsch Farms to purchase the 80 acres in five years (the "July Proposal").

45.     The July Proposal was premised on the notion that if any of the shareholders or their spouses disagreed with the proposal, as Tom Goettsch stated, then "nothing is going to happen" and the July Proposal would not go forward.

46.     The July Proposal was also premised on the recognition by Defendants that internal dissension and discord between the shareholders and their families was, in part, a justification for a separation of the family members as shareholders in Circle G.

47.     In July of 2012, Tom Goettsch sent minutes of the August 4, 2012 annual meeting to Dale Goettsch, even though the meeting had not yet occurred and would not

occur for another three weeks. These pre-meeting "minutes" described actions taken at the August 4, 2012 meeting, including the adoption of the July proposal, the passage of a motion to leave rent of Circle G's Farmland at $8,400 per month and to give Goettsch Farms a five-year lease, authorization for the payment of money to Goettsch Farms for a variety of projects, and the termination of dividends.

48.     The "combined" annual meeting of Circle G's shareholders and directors took place on August 4, 2012.

49.     At the August 4th meeting, Defendants Brian, Tom and Paul were elected as the Board of Directors of Circle G, and Brian Goettsch was elected president, Paul Goettsch secretary, and Tom Goettsch treasurer.

50.     At the August 4th meeting, discussion took place regarding the July Proposal, and the meeting was adjourned by Defendants in order for Plaintiffs to consider how to proceed, and Plaintiffs left the meeting.

51.     Tom Goettsch commented to Plaintiffs on August 4th that their stock in Circle G was worth nothing, and that their shares had no value.

52.     Tom Goettsch also told Dale Goettsch on August 4th that Dale, Kathy and Marge had to accept the July Proposal, that it was a take it or leave it offer, and if they failed to accept the proposal, Circle G would take the actions in the minutes of the August 4th meeting that he had sent earlier (even though the actions had not yet been voted on).

53.     As Brian Goettsch described this adjournment at the August 4th meeting, Plaintiffs were "dismissed".

- 10 -

54.     On August 4th, Plaintiffs were not advised that the meeting would continue as a shareholders or board of directors meeting to address other business.

55.     However, minutes of the August 4th meeting circulated by Defendants after the August 4th meeting indicated that the meeting continued after Plaintiffs were told it was over.

56.     At the continuation of the August 4th meeting, after Plaintiffs were told to think over the July Proposal, and after Plaintiffs left the meeting, Defendants, without Plaintiffs present, and while acting as the Board of Directors of Circle G, passed the following resolutions:

    (a)    Paul Goettsch and Plaintiffs would each receive 80 acres of Circle G land and $50,000 cash, and enter into a five-year lease with Goettsch Farms in exchange for surrendering their Circle G stock to Tom Goettsch;

    (b)    Circle G gave a five-year lease to Goettsch Farms at the existing rental rate of $8,400 per month (approximately $135 per acre);

    (c)    Circle G would pay Goettsch Farms $35,000 for farm repairs at the rate of $7,000 per month for the next five months;

    (d)    Circle G would pay Goettsch Farms $35,000 to build a new machine shed on the "home place"; and

    (e)    no dividends would be paid during the period when Circle G was repaying Goettsch Farms.

57.     According to the minutes circulated after the August 4, 2012 meeting, the Defendants also discussed making an additional $42,000 payment from Circle G to Goettsch Farms, but postponed such action, only because there were no funds to do so.

58.     None of the actions described in paragraph 57 of this Complaint were authorized or agreed to by Plaintiffs.

59.     The actions taken as described in the minutes circulated after the August 4, 2012 meeting were unfair and oppressive to Plaintiffs, and intended by Defendants to be unfair and oppressive to Plaintiffs.

60.     Defendants, all of whom had conflicts of interest, given their relationship with Goettsch Farms and the financial benefits they received from Goettsch Farms, voted at the August 4th meeting in favor of payments by Circle G to Goettsch Farms for services which benefitted Goettsch Farms and Defendants personally, and which did not benefit Circle G.

61.     Defendants' actions in authorizing payments by Circle G to Goettsch Farms to benefit themselves was an unlawful diversion of corporate assets.

62.     Defendants' payments to themselves or their affiliates depleted Circle G's funds, and at the August 4, 2012 meeting, Defendants cancelled further payments of the monthly dividends, which eliminated Plaintiffs' ability to receive any financial return on their ownership interest in Circle G.

63.     Defendants' actions in causing the lease of Circle G Farmland for five years to Goettsch Farms for $8,400 per month, all while Defendants had significant conflicts of interest, was also oppressive towards Plaintiffs, perpetuated the unfair rent

being charged by Circle G to Goettsch Farms, made no reference to rent bonuses, and the rental rate at approximately $135 per acre was and continues to be significantly less than fair rental value for comparable property.

64.    In adjourning the meeting without taking a shareholder vote or informing Plaintiffs that they intended to continue to discuss and vote on any issues involving the corporation, Defendants intentionally failed to provide proper notice of a shareholders' meeting.

65.    After Plaintiffs had objected to the actions taken by Defendants at the August 4, 2012 meetings as reflected in the minutes circulated after the meetings, Tom Goettsch, through his counsel, advised that the actions taken at the meetings were approved by a quorum and that such actions would stand.

66.    After Plaintiffs had objected to the actions taken by Defendants at the August 4, 2012 meetings as reflected in the minutes circulated after the meetings, Circle G's counsel advised that a majority of the shareholders had approved the minutes circulated after the August 4th meetings.

<u>**Plaintiffs' Rejection of the July Proposal**</u>

67.    In August of 2012, after the August 4, 2012 meetings, drafts of redemption agreements, leases, and right of refusal agreements were prepared by Circle G's counsel to reflect the July Proposal, and such drafts were circulated to Circle G's shareholders.

68.    Plaintiffs were all advised to obtain independent legal advice by Circle G's attorney.

69.     The parties intended that any final agreement on the July Proposal be reduced to writing and signed by all Circle G Shareholders for any agreement to be effective.

70.     In September, 2012, Plaintiffs rejected the July Proposal.

71.     In rejecting the July Proposal, Plaintiffs pointed out to Defendants that in an S corporation like Circle G, the structure of the Defendants' proposal would generate a significant direct federal and state income tax burden on the recipients of the appreciated land in the year the farmland was distributed to them, i.e., 2012, and that the cash involved in the July Proposal would not be sufficient to pay the income tax due. Plaintiffs also pointed out that those shareholders who remained as Circle G shareholders, i.e., Tom and Brian Goettsch, would also be required to pay significant income tax for 2012 as a result of the transactions contemplated by the July Proposal, due to the fact that Circle G would recognize gain upon distribution of the farmland, and because Circle G was an S corporation, that gain would need to be reported and taxed on their personal income tax returns.

72.     Defendants, as the Circle G Board of Directors who had made this proposal, had an inadequate understanding of the income tax implications of the July Proposal, and failed to act in an informed and deliberate manner in connection with the contemplated transaction.

73.     As an alternative, on September 27, 2012, Plaintiffs proposed that Circle G redeem their stock in a cash transaction, with installment payments over time, at a discount to market value, all of which would save considerable tax for Tom and Brian

- 14 -

Goettsch as the remaining shareholders of Circle G, and allow Plaintiffs to report their gain and pay taxes on such gain as cash was received.

### Defendant Tom Goettsch's Unfair and Oppressive Offers to Purchase Plaintiffs' Stock in Circle G

74.     In June of 2010, Tom Goettsch had offered to purchase Plaintiffs' stock in Circle G for $200 share, or $200,000, an offer that was significantly below fair value.

75.     Later in 2010, Tom Goettsch had offered to purchase Plaintiffs' shares for $300 per share, or $300,000, another offer that was significantly below fair value.

76.     On or about October 12, 2012, after Plaintiffs had sent their September 27, 2012 proposal, and rejected the July Proposal, Tom Goettsch, through his counsel, withdrew all prior offers, rejected Plaintiffs' proposal, and again offered to purchase all of the Plaintiffs' Circle G stock by payment of $300,000 cash to each of the Plaintiffs.

77.     Tom Goettsch's offer to buy all of the stock of each of the Plaintiffs for only $300,000 was characterized as "one last attempt to purchase their shares . . . ."

78.     At the time of Tom Goettsch's October 12, 2012 proposal, Plaintiffs owned approximately 42.87% of the outstanding stock, or alternatively 50% of the outstanding stock of Circle G (depending on whether the redemption of Paul Goettsch's stock in Circle G as set forth below had been finalized).

79.     At the time of Tom Goettsch's October 12, 2012 proposal, the fair value of Plaintiff's individual ownership stakes in Circle G was far in excess of $300,000 cash, and such offer was unreasonably low.

80.     Tom Goettsch's October 12, 2012 proposal to purchase Plaintiffs' individual ownership stakes in Circle G for $300,000 each, as well as his prior offers, was a continuation of his oppressive conduct directed to Plaintiffs, and in addition to the other actions described herein, operated to, and was intended to, squeeze out Plaintiffs from their ownership in Circle G at an unfair price so that Defendants could further profit.

<u>**2012 and 2013 Self-Dealing Transactions by Defendants**</u>

81.     Without disclosure to Plaintiffs, Defendants engaged in further self-dealing in the fall of 2012, when Defendants approved a transfer of approximately 80 acres of Circle G Farmland from Circle G to Paul Goettsch, in exchange for a redemption of Paul Goettsch's stock in Circle G.

82.     The effect of Circle G's redemption of Paul Goettsch's stock was that his stock in Circle G was no longer outstanding under Iowa Code §490.603.   After this redemption, Circle G was left with five shareholders:  Plaintiffs, who each owned 1,000 shares, Tom Goettsch, who owned 2,000 shares, and Brian Goettsch, who owned 1,000 shares.

83.     A warranty deed dated August 25, 2012, from Circle G to Paul Goettsch, and signed by Brian Goettsch on behalf of Circle G, transferred the land described as follows:

> The South Half of the Northwest Quarter of Section 17, Township 89 North, Range 39, West of the 5th P.M., Ida County, Iowa

was filed in the Ida County Recorder's office on or about November 26, 2012.

- 16 -

84.     The aforementioned warranty deed was dated August 25, 2012, and described the same land that was proposed to be conveyed to Paul Goettsch in exchange for his stock in Circle G as a part of the July Proposal.

85.     On information and belief, Paul Goettsch signed the "Agreement for Sale of Stock and Partial Disrubtion [sic] of Corporate Assets", prepared and circulated as a part of the July Proposal, when the deed which conveyed him such land, dated August 25, 2012, was signed on behalf of Circle G.  The "Agreement for Sale of Stock and Partial Disrubtion [sic] of Corporate Assets" provided that Paul surrender his 1,000 shares of stock in Circle G.  On information and belief, Paul Goettsch also signed the other agreements circulated as a part of the July Proposal, including a five-year lease in favor of Goettsch Farms with respect to the land conveyed to him by Circle G, as well as an Option to Purchase and Right of Refusal in favor of Goettsch Farms.  These agreements are collectively referred to as the "Redemption of Paul Goettsch's Stock".

86.     The Redemption of Paul Goettsch's Stock was undertaken after Tom Goettsch represented that if not all the shareholders and their spouses agreed to the July Proposal, then nothing would be done.

87.     The Redemption of Paul Goettsch's Stock involved the transfer of land which had significantly appreciated in excess of the shareholders' and Circle G's tax basis, and exposed Circle G and the remaining shareholders of this S corporation, including Plaintiffs, to unnecessary and significant income tax liability in the year in which the transfer took place.

- 17 -

88.     When the Defendants went forward with the Redemption of Paul Goettsch's Stock as described herein, all after being advised by Plaintiffs of the income tax ramifications of transferring appreciated land out of an S corporation and how that would affect all the remaining shareholders, Defendants breached their duty of care to the corporation and to Plaintiffs, which caused an unnecessary loss to Circle G and damaged Plaintiffs.

89.     All of the Defendants, as members of the Board of Directors of Circle G, had conflicts of interest when they authorized the Redemption of Paul Goettsch's Stock.

90.     Defendants failed to disclose to Plaintiffs that Circle G had transferred 80 acres to Paul Goettsch for his stock.

91.     On information and belief, in March of 2013, Defendants authorized Circle G to sell 80 acres of Circle G's Farmland to Tom Goettsch, or his affiliates, for the sum of approximately $920,000.

92.     When Defendants authorized Circle G to sell 80 acres of Circle G land to Tom Goettsch or his affiliates, on information and belief, Defendants did so at a price which was inadequate and below fair market value.

93.     When Defendants sold land of Circle G to Tom Goettsch or his affiliates, they all acted with a conflict of interest as directors of Circle G.

94.     When Defendants sold land of Circle G to Tom Goettsch or his affiliates, they did so in part to create a fund on the part of Circle G to pay income taxes attributable to the Redemption of Paul Goettsch's Stock in 2012, which redemption was a breach of their duty of care as members of Circle G's Board of Directors.

95.     Circle G is and has been in the business of leasing for cash its farmland for farming purposes and had a continuing interest and expectancy of leasing its farmland, and Plaintiffs reasonably expected Circle G to continue such activities.

96.     When Defendants caused Circle G to sell its land to Tom Goettsch, Tom Goettsch and the other directors, all acting with conflicts of interest, usurped a corporate opportunity of Circle G.

97.     When Circle G sold its assets to the principal shareholder and a member of the Board of Directors of Circle G, Defendants failed to offer such land for purchase to third parties or the public, and failed to explore the possibility that the land sold to Tom Goettsch or his affiliates could be sold at a higher price to a person outside the corporation or to a person who did not control Circle G.

98.     Defendants failed to disclose to Plaintiffs the sale of land by Circle G to Tom Goettsch or his affiliates.

99.     To the extent that Defendants have attempted to recast the transaction between Circle G and Paul Goettsch in 2012 to be a sale of Circle G stock from Paul Goettsch to Tom Goettsch, Defendants have engaged in further acts of oppression and fraud, as no notice to purchase with respect to such transaction was ever provided to Circle G or to Plaintiffs, as required by the Circle G Bylaws, or alternatively, the terms of a Buy and Sell Agreement dated May 19, 2005.

100.    By causing Circle G to sell its land to Tom Goettsch or his affiliates, Defendants have depleted the corporation's assets so that Defendants could profit, and failed to disclose the transaction or seek Plaintiffs or all the shareholders' approval of a

sale of corporate assets, all in a manner inconsistent with the reasonable expectations of Plaintiffs.

101.    Plaintiffs had a reasonable expectation as shareholders in Circle G that Circle G Farmland would not be sold without their agreement or approval.

102.    Defendants' actions in authorizing the sale of 80 acres by Circle G to Tom Goettsch or his affiliates, and Tom Goettsch's purchase of such 80 acres, was oppressive conduct towards Plaintiffs.

103.    Defendants' actions in authorizing the sale of 80 acres by Circle G to Tom Goettsch was a breach of their fiduciary duties of care, good faith, disclosure, and loyalty they owed to Circle G and its shareholders as directors, officer, and shareholders.

## Defendants Have Failed to Communicate Even Basic Information on Corporate Matters to Plaintiffs

104.    On or about January 21, 2013, Plaintiffs made a written demand to the Defendants, as the Board of Directors of Circle G, which indicated that the actions taken at the August 4, 2012 meeting were not properly authorized and were unfair, including the decision to lease the Circle G Farmland to Goettsch Farms for $8,400 per month, the actions to pay Goettsch Farms, and the decision to stop paying dividends, and requested such actions be rescinded.

105.    Defendants never replied to Plaintiffs January 21, 2013 demand.

106.    The 2012 1120S Schedule K-1 forms distributed by Circle G to Plaintiffs report that each of the Plaintiffs had a $95,755 net section 1231 taxable gain for 2012, all of which was generated by the 2012 Redemption of Paul Goettsch's stock.

107.     On information and belief, the distribution of land to Paul Goettsch which caused the Plaintiffs and other shareholders to incur a taxable gain for the year ending December 31, 2012 was valued by Circle G at approximately $11,300 per acre.

108.     Plaintiffs received dividends in April 2013 to pay the income tax associated with the $95,755 taxable gain incurred in 2012, and on information and belief, to provide funds to pay the taxable gain which will result in 2013 from the sale of appreciated land by Circle G, an S corporation, to Tom Goettsch or his affiliates, in 2013.

109.     Plaintiffs have also requested Defendants Tom and Brian Goettsch to provide information relating to the purchase by Tom Goettsch or his affiliates of land from Circle G, as well as information regarding the transaction between Circle G and Paul Goettsch, as well as their future income tax liabilities, but Defendants have not responded to such requests.

110.     Defendants' failure to disclose that they intended to continue the August 4, 2012 meeting and address the matters that would financially benefit themselves personally while disadvantaging Plaintiffs, the Redemption of Paul Goettsch's Circle G Stock in 2012 and the related tax liability, and the sale of land by Circle G to Tom Goettsch or his affiliates, were, both separately and collectively, a breach of Defendants' duties of disclosure and good faith as directors, officers and shareholders of Circle G.

111.     Defendants' actions as outlined herein, as directors and those in control of Circle G, have consistently engaged in conduct which has been and continues to be a departure from standards of fair dealing required of those in control of a closely-held corporation.

112.     Defendants' actions as outlined herein have been inconsistent with the reasonable expectations of Plaintiffs as minority shareholders in a closely-held corporation.

## COUNT ONE

### Judicial Dissolution or Buy Out or Other Equitable Relief Under Iowa Code §490.1430

**(Defendants Tom Goettsch, Brian Goettsch and Paul Goettsch, and Circle G Farms, Inc.)**

113.     Plaintiffs reallege the allegations of paragraphs 1 through 112 as if fully set forth herein.

114.     Defendants, as directors and as the individuals in control of Circle G, have acted, continue to act, and will likely continue to act in a manner that is illegal, oppressive, or fraudulent in connection with Circle G.

115.     Defendants, as directors and as the individuals in control of Circle G, have misapplied or wasted Circle G's assets.

116.     Defendants, as directors and as the individuals in control of Circle G, have breached their fiduciary duties as directors, officers and shareholders in a multitude of ways, all of which have injured Plaintiffs and all of which, individually or collectively, constitute oppressive conduct within the meaning of Iowa Code §490.1430.

117.     Defendants' acts and omissions as set forth herein have had the effect of, and were intended to, freeze out or squeeze out Plaintiffs from meaningful participation in the business of Circle G, and from realizing a meaningful financial return in connection with their ownership of Circle G.

118.     Defendants, as directors or those in control of Circle G, have consistently disregarded the reasonable expectations of Plaintiffs by engaging in improper self-dealing, entering into favorable agreements for personal profit at the expense of Circle G, taking actions to terminate any financial return to Plaintiffs from their ownership in Circle G so Defendants could profit personally, diverting corporate assets, seeking to buy out Plaintiffs at a price significantly below fair value, and excluding Plaintiffs from meaningful participation in the business of Circle G.

119.     Defendants' illegal, oppressive and fraudulent activities demand a judicially-ordered dissolution of Circle G, or alternatively, a mandatory buyout of all of Plaintiffs' Circle G stock at fair value (as defined in Iowa Code §490.1301(4)) by Defendants or Circle G, or alternatively, other appropriate equitable relief.

120.     Iowa Code §490.1431(4) requires the corporation to provide written notice to the shareholders that the shareholders are entitled to avoid dissolution of the corporation by electing to purchase the Plaintiffs' shares under Iowa Code §490.1434.

## COUNT TWO

### Breach of Fiduciary Duty – Rent Issues

### (Tom Goettsch, Brian Goettsch, Paul Goettsch, and Goettsch Farms)

121.     Plaintiffs reallege the allegations of paragraphs 1 through 120 as if fully set forth herein.

122.     Circle G is and has been in the business of renting for cash its primary asset, farmland, for farming purposes.

123.     Defendants' acts and omissions in connection with the rental of Circle G Farmland to Goettsch Farms, and the inadequate rent charged, were the result of Defendants' efforts to personally profit at the expense of Circle G and its shareholders, and constitute a breach of their fiduciary duty of care, loyalty and good faith, as the rent charged has been and continues to be significantly under fair market value.

124.     Defendants, as directors, officers, and those in control of a closely-held corporation, owed special fiduciary duties to Plaintiffs.

125.     The actions taken by Defendants at or in connection with the August 4, 2012 Annual Meeting  continued a pattern of establishing rental rates on behalf of Circle G which were significantly below market value and, in fact, actually reduced the net rent paid to Circle G by Tom and Brian Goettsch through Goettsch Farms.

126.     Defendants' breach of fiduciary duties has caused damage to Circle G, which has lost revenue for years which could have been realized by charging market rent, and has damaged Plaintiffs.

127.     Circle G's lost revenue since July of 2012 would have been available to be distributed to its shareholders, including Plaintiffs and Defendants Tom and Brian Goettsch.

128.     Instead of distributions to all the shareholders of Circle G, Goettsch Farms, and its directors, officers, and owners Tom and Brian Goettsch, effectively diverted Circle G's revenue stream and the amount available for shareholder distributions through the payment of below market rent.

129.     Defendants Goettsch Farms and Tom and Brian Goettsch have been unjustly enriched through Defendants' actions which caused Circle G to charge below market rent.

130.     Defendants Tom and Brian Goettsch have not sustained any loss as a result of Defendants' actions in causing Circle G to charge below market rent, and amongst the Circle G shareholders, only Plaintiffs have been injured by Defendants' conduct.

131.     Plaintiffs demanded that Defendants rescind their decision with respect to rent to be charged by Circle G to Goettsch Farms, but Defendants never responded to Plaintiffs' demand.

132.     Plaintiffs' claim as set forth herein and the maintenance of this claim as a direct claim will not unfairly expose Circle G or Defendants to a multiplicity of actions.

133.     Plaintiffs' claim as set forth herein and the maintenance of this claim as a direct claim will not materially prejudice the interests of creditors of Circle G.

134.     Plaintiffs' claim as set forth herein and the maintenance of this claim as a direct claim will not interfere with a fair distribution of the recovery among any interested persons.

135.     As a direct result of Defendants' breach of fiduciary duty, Plaintiffs have been damaged in an amount in excess of One Hundred Thousand Dollars ($100,000).

136.     Defendants and Goettsch Farms are liable for damages as a direct result of Defendants' actions as described herein.

## COUNT THREE

### Breach of Fiduciary Duty

**(Tom Goettsch, Brian Goettsch, Paul Goettsch, and Goettsch Farms)**

137.   Plaintiffs reallege the allegations of paragraphs 1 through 136 as if fully set forth herein.

138.   As noted herein, Defendants' actions in connection with the sale of Circle G Farmland to Tom Goettsch was a breach of their fiduciary duty of loyalty and good faith to Circle G and its shareholders, including Plaintiffs.

139.   Circle G is and has been in the business of renting for cash its primary asset, farmland, for farming purposes.

140.   Defendants' acts and omissions in connection with the sale of Circle G Farmland to Tom Goettsch or his affiliates involved an effort on the part of Defendant Tom Goettsch to personally profit at the expense of Circle G and its shareholders by paying a below fair market value price for such land, and were actions not taken in good faith.

141.   Defendants' acts and omissions in connection with the sale of Circle G Farmland to Tom Goettsch constitute a breach of their fiduciary duty of care, loyalty and good faith, as the price charged was under fair market value.

142.   Defendants' acts and omissions in connection with the sale of Circle G Farmland to Tom Goettsch constitute a breach of their fiduciary duty of care, loyalty and good faith, as such actions were prompted in part to raise cash to pay taxes due as a result of the Redemption of Paul Goettsch's stock, which in turn was an imprudent and

unreasonable decision caused by Defendants' lack of good faith and lack of informed judgment on the tax consequences of such a transaction.

143. Defendants, as directors, officers, and those in control of a closely-held corporation, owed special fiduciary duties to Plaintiffs.

144. Plaintiffs' claim as set forth herein and the maintenance of this claim as a direct claim will not unfairly expose Circle G or Defendants to a multiplicity of actions.

145. Plaintiffs' claim as set forth herein and the maintenance of this claim as a direct claim will not materially prejudice the interests of creditors of Circle G.

146. Plaintiffs' claim as set forth herein and the maintenance of this claim as a direct claim will not interfere with a fair distribution of the recovery among any interested persons.

147. As a direct result of Defendants' breach of fiduciary duty, Plaintiffs have been damaged in an amount in excess of One Hundred Thousand Dollars ($100,000).

148. Defendants are liable for damages sustained by Circle G and by Plaintiffs or, alternatively, should disgorge any profits received by them as a result of their breach.

**WHEREFORE**, Plaintiffs respectfully request the Court enter judgment in their favor and enter an Order:

(a) dissolving Circle G as an Iowa corporation, and requiring that its assets be sold under a Court-supervised process or, alternatively, requiring Circle G to redeem all of Plaintiffs' stock in exchange for fair value as defined in Iowa Code §490.1301(4); or

(b)     alternatively, require Defendants or some of them to purchase all of Plaintiffs' stock in Circle G in exchange for fair value as defined in Iowa Code §490.1301(4); and

(c)     for other appropriate declaratory and equitable relief to address Defendants' breaches of fiduciary duties and acts of oppression; and

(d)     awarding damages for Defendants' breaches of fiduciary duty and other misconduct;

(e)     awarding Plaintiffs their costs, disbursements and reasonable attorneys' fees as allowed by law; and

(f)     and for such other relief as allowed by law.

**GRAHAM, ERVANIAN &
CACCIATORE, LLP**

Dated:  June 12, 2013.                    By /s Wesley T. Graham
                                              William W. Graham, #AT0002953
                                              Wesley T. Graham, #AT0011184
                                              317 6th Avenue, Suite 900
                                              Des Moines, Iowa  50309
                                              Telephone:  515-244-9400
                                              wwg@grahamlawiowa.com
                                              wtg@grahamlawiowa.com
                                              Attorneys for Plaintiffs

Of Counsel:
**HENSON & EFRON, P.A.**
Bruce C. Recher, MN Atty. License #89989*
220 South Sixth Street, Suite #1800
Minneapolis, Minnesota  55402-4503
Telephone:  612-339-2500
Attorneys for Plaintiffs

*pro hac vice application forthcoming

474684.DOCX